IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Harpreet Singh, | : | |
| | : | |
| Petitioner, | : | Case No. 1:26-cv-136 |
| | : | |
| v. | : | |
| | : | Judge Susan J. Dlott |
| Kevin Raycraft, Acting Field Officer | : | |
| Director of Enforcement and Removal | : | |
| Operations, Detroit Field Office, | : | Order Granting Petition for Writ of |
| Immigration and Customs Enforcement, | : | Habeas Corpus |
| *et al.*, | : | |
| | : | |
| Respondents. | : | |

This matter is before the Court on the Petition for Writ of Habeas Corpus ("Habeas Petition") filed by Petitioner Harpreet Singh.  (Doc. 1.)  Singh, a citizen of India, challenges his detention at the Butler County, Ohio Jail in the custody of Respondents, including the United States Immigration and Customs Enforcement ("ICE").  He argues that he is being unlawfully held and denied a constitutionally adequate custody redetermination hearing—a bond hearing—in a misapplication of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a).  As the Court has done in analogous cases, the Court again holds here that detainees like Singh, who entered the country years ago without an inspection, are entitled to a bond hearing under § 1226(a).[1]  Singh's continued detention without a bond hearing violates the INA and his due process rights.  The Court will **GRANT** the Habeas Petition.

---

[1]  *See*, *e.g.*, *Ramirez Quintana v. Lynch*, 1:25-cv-919, 2026 WL 746359 (S.D. Ohio Mar. 17, 2026); *Valdez Lopez v. Raycraft*, No. 1:26-cv-68, CM/ECF Doc. 17 (S.D. Ohio Apr. 4, 2026).

## I.      BACKGROUND

### A.      Factual History

Singh is a citizen of India, and he entered the United States without an inspection on December 16, 2022 at or near Lukeville, Arizona.  (Doc. 11-1 at PageID 390.)  He was released and paroled into the United States on December 17, 2022 due to limited detention space.  (*Id.* at PageID 391.)  The parole ended on February 16, 2023.  (*Id.*; Doc. 1-2 at PageID 40.)  In May 2023, Singh filed a Form I-589 Application for Asylum and for Withholding of Removal under the INA and the Convention Against Torture based on his race, religion, and political opinion.  (Doc. 1-3 at PageID 42–59.)  He asserted therein that he had been hanged upside down and beaten until he became unconscious in September 2022 by the Punjab Police.  (*Id.* at PageID 54.)  He stated that he left India on December 1, 2022 because his "life was not safe in India."  (*Id.* at PageID 55.)  That Application still is pending.

Singh alleges that he moved to Ohio after he was released from ICE custody and went to live in Ohio with his sister and his brother-in-law, a United States citizen.  (Doc. 1 at PageID 11.)  He obtained a commercial driver's license in Ohio, and his employer states that Singh can return to work upon his release.  (Doc. 1-1 at PageID 31; Doc. 1-7 at PageID 67.)  He married a United States citizen on November 30, 2025.  (Doc. 1-5 at PageID 59.)

Singh checked in with ICE at a Cincinnati Field Office on December 3, 2025 as required. He alleges that he was asked to return on January 13, 2026.  (Doc. 1 at PageID 11.)  ICE officers took Singh into custody at his January 13, 2026 check-in.  (*Id.*; Doc. 11-2 at PageID 393.)  He is detained at the Butler County, Ohio Jail.  (Doc. 1 at PageID 11.)  The Department of Homeland Security ("DHS") issued him a Notice to Appear before an Immigration Judge of the United States Department of Justice ("DOJ") in Cleveland, Ohio on February 12, 2026.  (Doc. 1-2 at

PageID 35.)  On the Notice to Appear form, DHS checked the box stating that Singh was "an alien present in the United States who has not been admitted or paroled." (*Id.*)  DHS did not check the two alternative boxes stating that he was "an arriving alien" or that he had been "admitted to the United States, but [was] removable for the reasons stated below." (*Id.*)  DHS made the following allegations:

> 1. You are not a citizen or national of the United States;
>
> 2. You are a native of INDIA and a citizen of INDIA;
>
> 3. You arrived in the United States at or near unknown place, on or about unknown date;
>
> 4. You were not then admitted or paroled after inspection by an Immigration Officer;
>
> 5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or
>
> 6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

(*Id.* at PageID 35, 38.)  DHS charged Singh with being an alien present in the United States without being admitted or paroled in violation of 8 U.S.C. § 1182(a)(6)(A)(i) and with entering the United States without valid required entry, identification, and nationality documentation in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (*Id.* at PageID 38; Doc. 11-2 at PageID 393.)  Hearings were scheduled for February 24, 2026 and March 10, 2026.  (Docs. 11-3, 11-4.)  The parties did not provide this Court with records of what happened at those Immigration Court proceedings, but the AUSA states that Singh admitted factual allegations 1, 2, and 5 and denied allegations 3, 4, and 6.  (Doc. 11 at PageID 370.)

**B.     Procedural Posture**

Singh filed his Habeas Petition on February 9, 2026 against Respondents Kevin Raycraft

in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Detroit Field Office, ICE; Kristi Noem in her official capacity as Secretary of DHS; and DHS itself.  (Doc. 1.)  He alleges that Respondents have unlawfully detained him without an individualized bond hearing.  (*Id.* at PageID 2, 12–13.)  He alleges that Respondents have wrongfully asserted that his detention is governed by 8 U.S.C. § 1225(b)(2)(A)—which requires mandatory detention—when, in fact, his detention is governed by 8 U.S.C. § 1226(a)—which provides for discretionary detention and an individualized bond hearing.  (*Id.* at PageID 1–2.) He asserts multiple claims for relief:

1. Violation of the INA;

2. Violation of bond regulations under the INA;

3. Violation of the Administrative Procedure Act ("APA") and INA;

4. Violation of the Suspension Clause of the United States Constitution;

5. Violation of substantive due process under the Fifth Amendment to the Constitution; and

6. Violation of procedural and substantive due process under the Fifth Amendment to the Constitution.

(*Id.* at PageID 13–24.)

Respondents filed their Return of Writ to the Habeas Petition on March 2, 2026.  (Doc. 11.)  They assert that Singh is being properly detained under 8 U.S.C. § 1225(b)(2)(A) and that his due process rights are not being violated.  (*Id.* at PageID 370–376; 385, 387–388.)  They also assert that Singh needs to exhaust administrative remedies before seeking habeas relief.  (*Id.* at PageID 381–385.)  Finally, Singh filed a Reply to the Return of Writ on March 19, 2026.  (Doc.

12.)[2]

## II.    LAW AND ANALYSIS

The Court first will address the threshold issue of whether administrative exhaustion is required.  Then the Court will turn to the merits of the INA claims: whether Singh's detention is governed by 8 U.S.C. § 1225(b)(2)(A)—in which case detention is mandatory—or by 8 U.S.C. § 1226(a)—in which case Singh is eligible for a bond hearing.  Finally, the Court will examine Singh's due process claim.  Because Singh is entitled to habeas relief under these claims, the Court does not need to examine whether he might be entitled to relief under the APA or the Suspension Clause.

### A.    Exhaustion of Administrative Remedies

Respondents contend that the Habeas Petition should be dismissed because Singh did not first exhaust his administrative remedies.  Singh has not made a formal request for a bond hearing to the Immigration Judge.  He asserts that administrative exhaustion is not mandatory and should not be required here.  Immigration judges are refusing to provide custody redetermination hearings—bond hearings—on the authority of *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220, 229 (BIA Sept. 5, 2025).  In that case, the Board of Immigration Appeals held that noncitizens who are present in the United States without admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), without eligibility for bond, during the

---

[2]  In the prayer for relief in the Habeas Petition, Singh asks for recognition as a member of the Bond Eligible Class in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, — F.Supp.3d—, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).  (Doc. 1 at PageID 24.)  Respondents, in turn, devote part of their Return of Writ arguing that Singh is not entitled to relief under *Maldonado Bautista*.  (Doc. 11 at PageID 376–381.)  However, in his Reply, Singh disclaims that he is seeking relief under *Maldonado Bautista*.  (Doc. 12 at PageID 402.)  He contends that he only cites it as persuasive authority.  (*Id.*)  The Court, therefore, need not and does not address the applicability of the *Maldonado Bautista* in this judicial district.

duration of their removal proceedings.  *Id.* at 220, 229.  For the reasons below, the Court will not require prudential exhaustion in this case.

Generally, a petitioner must exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241, although the statute itself does not expressly contain such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 144–145 (1992), *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006).  The decision to require exhaustion is within the discretion of the district court when it is not mandated by statute.  *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025) (citing *McCarthy*, 503 U.S. at 144).

There is no clear statement from Congress "that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention."  *Salvador F.-G. v. Noem*, No. 25-cv-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025).  Courts within the Sixth Circuit have applied the Ninth Circuit's test set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), for prudential exhaustion.  *See, e.g.*, *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 778 (E.D. Mich. 2025).  Under that test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id*.  These factors weigh against imposing prudential exhaustion here.  Statutory interpretation issues are properly addressed by federal courts.  Also, to the extent that Singh has raised a due

6

process challenge to his continued detention without a bond hearing, exhaustion is not appropriate because the BIA cannot review such constitutional challenges.  *See, e.g.*, *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

Alternatively, even when a district court might normally require prudential exhaustion, the court may waive the requirement.  Requiring exhaustion in this case would very likely subject Singh to unreasonable delay, as appeals to the BIA of an immigration judge's decision denying bond often take six months or longer to resolve.  *Lopez-Campos*, 797 F.Supp.3d at 778–779 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)); *see also Velasco-Sanchez*, 2025 WL 3553672, at *5 ("Exhaustion is also excused when delay means hardship.") (citation omitted).  Finally, prudential exhaustion also is not required where it would be futile, as it almost certainly would be here.  By its decision in *Matter of Yajure Hurtado*, the BIA has already rejected the statutory argument that Singh presents to this Court.  Respondents do not contend that the BIA is likely to reverse course on its *Matter of Yajure Hurtado* ruling.

For these reasons, the Court finds that prudential exhaustion was not required for Singh to bring this action.

## B.    INA Claims

The Court now turns to merits of the Habeas Petition.  Singh alleges that his continued detention without a bond hearing violates the INA and its regulations.  (Doc. 1 at PageID 13–15.) His continued detention without a bond hearing is unlawful if his detention is governed by 8 U.S.C. § 1226(a).  Conversely, his detention is mandatory if it is governed by 8 U.S.C. § 1225(b)(2)(A).  As explained below, the Court is persuaded that "[d]etention under § 1226(a) attaches where DHS encounters a noncitizen within the interior [of the United States] after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only

7

where the individual encountered is 'seeking admission' at the border or its functional equivalents." *Ortiz Guiterrez v. Raycraft*, No. 1:26-cv-69, — F.Supp.3d—, 2026 WL 456065, at *3 (S.D. Ohio Feb. 18, 2026).

The Court starts with the text of the two INA detention provisions.  When faced with a question of statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)).  The Court must read each word in the statute in line with "its ordinary, contemporary, common meaning." *Ky. v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)).  If the plain text of the statute leaves ambiguity, courts turn to the canon that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) ("statute(s) should be construed so that effect is given to all [their] provisions[.]") (citation omitted).

1.      **8 U.S.C. § 1225(b)**

Section 1225(b)(2)(A) imposes mandatory detention of an "applicant for admission" who is "seeking admission" if an immigration officer has determined that the applicant is not entitled to admission in the United States:

> **§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**
>
> * * *
>
> **(b) Inspection of applicants for admission**
>
> * * *

**(2) Inspection of other aliens**

**(A) In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (italicized emphasis added).  This statutory section defines an

"applicant for admission" in § 1225(a)(1) as an alien "present in the United States who has not

been admitted or who arrives in the United States (whether or not at a designated port of

arrival . . . ."  8 U.S.C. § 1225(a)(1).  Additionally, "admission" and "admitted" are defined as

"the lawful entry of the alien into the United States after inspection and authorization by an

immigration officer."  8 U.S.C. § 1101(a)(13(A).  "A noncitizen detained under [s]ection

1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant

public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)."  *Lepe v. Andrews*, 801 F.Supp.3d 1104,

1111 (E.D. Cal. 2025) (citation omitted).  "Other than this limited exception (which is not

implicated here), detention under § 1225(b)(2) is considered mandatory."  *Lopez Benitez v.*

*Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025) (cleaned up); *see also Lopez-Campos*, 797

F.Supp.3d at 777.

    **2.**        **8 U.S.C. § 1226**

Section 1226(a), on the other hand, allows for discretionary detention, as shown by the

use of the word "may":

**§ 1226. Apprehension and detention of aliens**

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the

9

United States.  Except as provided in subsection (c) and pending such decision, the Attorney General--

(1) may continue to detain the arrested alien; and

(2) may release the alien on--

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; [ . . .]

8 U.S.C. § 1226(a) (italicized emphasis added).[3]  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez-Campos*, 797 F.Supp.3d at 777 (stating that noncitizens under § 1226(a) "have a right to request a custody redetermination (*i.e.,* bond hearing) before an Immigration Judge") (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  The Immigration Judge then "evaluates whether there is a risk of nonappearance or danger to the community."  *Lopez-Campos*, 797 F.Supp.3d at 777.

### 3.    Interpretation

As of the writing of this decision, the Sixth Circuit has yet to decide whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) governs detention under these circumstances.[4]  District court opinions within the Sixth Circuit have diverged, but the vast majority are in favor of the Petitioner's position.  *See*, *e.g.*, *compare*, *e.g.*, *Ortiz Guiterrez*, 2026 WL 456065, at *3–5 (joining majority of jurists to find § 1226(a) governed petitioner's detention and respondents'

---

[3]  Subsection (c), recently amended by the Laken Riley Act, makes detention mandatory for aliens found inadmissible or deportable under certain provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes, but it does not apply here.  8 U.S.C. § 1226(c).

[4] The Court is mindful that the issue is before the Sixth Circuit in the consolidated appeal of *Juan Lopez-Campos v. Raycraft*, No. 25-1965; *Juan Sanchez Alvarez v. Noem*, No. 25-1969; *Jose Contreras-Cervantes v. Raycraft*, No. 25-1978; *Jesus Pizarro Reyes v. Raycraft*, No. 25-1982.

detaining the petitioner without bond violated his due process rights) *with Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at \*12–14 (S.D. Ohio Dec. 15, 2025) (holding § 1225(b)(2)(A) governed the petitioner's detention and dismissing habeas petition).[5]

The Court concludes that the plain language of § 1226(a) more naturally aligns with Singh's detention, while the application of § 1225(b)(2)(A) to Singh's detention requires a strained statutory interpretation and is not persuasive.  The present-tense language used in § 1225(b)(2)(A) does not match Singh's status because he was not "seeking admission" when he was detained by Respondents in January 2026.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 781 ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.  Noncitizens who are just 'present' in the country—those like [Petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship … —are not 'seeking' admission."); *Lopez Benitez*, 795 F.Supp.3d at 488–489 (the phrase "seeking admission" necessarily implies present-tense action) (cleaned up).[6]

---

[5] One unofficial tally of district court opinions can be found at Politico, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true, (last viewed 3/30/2026).

[6]  As the court in *Lopez Benitez* aptly analogized:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater.  Rather, that person would be described as already present there.  Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry")

11

Further, continuing to look at the plain language of the statute, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F.Supp.3d 211, 214 (D. Mass. 2025); *see also Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *7 (N.D. Ill. Oct. 24, 2025).  It does not appear that *any* of these findings were made here, since Singh was not inspected by an immigration officer.  (Doc. 1-2 at PageID 35.)  After Singh was taken into custody in January 2026, DHS issued a Notice to Appear and checked the box charging him with being "an alien *present* in the United States who has not been admitted or paroled."  (*Id.* (emphasis added).)  DHS did not check the box for the alternative option of charging him with being "an arriving alien."  (*Id.*)  It is inconsistent for Respondents to suggest that the two potential charges are categorically the same when the Notice to Appear form treats them as alternative and distinct categories.  *See Patel*, 2025 WL 2996787, at *5.  As in *Patel*, the Government affirmatively treated Singh as being detained under § 1226(a) on the Notice form, and it cannot now be heard to change its position to claim that he is detained under § 1225(b)(2)(A).  *See id*. at *5–6.  In sum, under the first rule of statutory interpretation—to give plain, ordinary meaning to each word in the statutes at issue—this Court finds that Singh's detention is governed by § 1226(a), not § 1225(b)(2)(A).

The Court's conclusion is buttressed by the Supreme Court's seminal opinion in

---

at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.***

*Lopez Benitez*, 795 F.Supp.3d at 489.

*Jennings*, albeit in dicta.  The Supreme Court in *Jennings* drew a clear distinction between noncitizens detained while seeking admission and noncitizens detained after already being in the country:

> . . . U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289 (emphasis added); *see also*, *e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 782 ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs detention of noncitizens 'already in the country.'") (quoting *Jennings*, 583 U.S. at 288); *Sanchez Alvarez v. Noem*, 807 F.Supp.3d 777, 787 (W.D. Mich. 2025) ("*Jennings* noted that § 1225 is part of the 'process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.' *** Section 1226, however, applies to the process of 'arresting and detaining' aliens who are already living within the United States but are still subject to removal.") (quoting *Jennings*, 583 U.S. at 287), *on appeal* No. 25-1969 (6th Cir.).  *Jennings* supports the conclusion that Singh, who entered the United States in 2022 and has been residing in Ohio, is being detained under § 1226(a).

Finally, the Court does not agree with Respondents' contention that Singh's status reverted to that of a noncitizen "seeking admission" under 8 U.S.C. § 1225(b)(2) when his parole ended.  The INA authorizes DHS to grant humanitarian parole to noncitizens detained at the border pursuant to 8 U.S.C. § 1182(d)(5)(A).  Section 1182(d)(5)(A) states that a noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for

admission to the United States" when his parole ends.  Whether or not § 1182(d)(5)(A) authorizes DHS to take a noncitizen back into detention when their parole expires, "there is nothing in this text that affirmatively authorizes indefinite detention." *Forys v. Raycraft*, No. 1:26-CV-149, 2026 WL 516951, at *2 (W.D. Mich. Feb. 25, 2026) (cleaned up).

"[N]oncitizens released on parole remain applicants for admission after their parole ends." *Quintero v. Olson*, No. 4:26-cv-34, 2026 WL 596643, at *2 (W.D. Ky. Mar. 3, 2026). The category of applicants for admission who are also seeking admission and covered under § 1225(b)(2) "does not include petitioners who remained in the United States after their parole ended." *Id.*  Instead, "§ 1226(a) . . . governs 'any other applicant for admission' who has resided in the United States and was already within the United States when apprehended and arrested." *Forys*, 2026 WL 516951, at *2 (quoting § 1182(d)(5)(A)); *see also*, *e.g.*, *Ivonin v. Rhoney*, No. 6:25-CV-06673 EAW, 2026 WL 199283, at *4 (W.D.N.Y. Jan. 26, 2026) ("This Court agrees . . . that in instances, as here, where a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226.") (emphasis in the original).

The Court holds that Respondents' refusal to provide Singh with a bond hearing violates the INA, 8 U.S.C. § 1226(a).  *See Jennings*, 583 U.S. at 306 (finding that regulations provide right to bond hearing for detentions under § 1226(a)); *Lopez-Campos*, 797 F.Supp.3d at 777 (same).

## C.    Due Process Claims

Singh also alleges that the failure to provide him with a bond hearing violates his due process rights.  (Doc. 1 at PageID 20–24.)  Respondents' primary defense is that due process

14

does not require a bond hearing for a noncitizen detained pursuant to 8 U.S.C. § 1225(b)(2)(A).

It argues that under Supreme Court precedent a noncitizen seeking initial entry into the country

has "only those [due process] rights regarding admission that Congress has provided by statute."

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–140 (2020).  That defense fails at

the onset because the Court has held that Singh's detention is governed by 8 U.S.C. § 1226(a),

under which bond hearings are provided, and not by § 1225(b)(2)(A).  This Court's holding is

consistent with *Thuraissigiam* insofar as the Supreme Court also noted that noncitizens "who

have established connections in this country have due process rights in deportation proceedings."

*Id.* at 107.

This Court is persuaded that detaining Singh under § 1225(b)(2)(A) deprived him—and

continues to deprive him—of due process rights under the Fifth Amendment.  "Non-punitive

detention in the immigration context violates the Due Process Clause, absent adequate

procedural protections or a special justification outweighing a petitioner's liberty interest."

*Ortiz Gutierrez*, 2026 WL 456065, at *4 (cleaned up).  As such, "detention [under § 1226(a)] is

discretionary and constitutionally constrained by due process."  *Id*. (citation omitted).  The Court

finds that Respondents violated Singh's due process rights by enforcing mandatory detention

under § 1225(b)(2).  The Court thus turns to the matter of what process is due to Singh.

Courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to

determine the adequacy of the process in the context of civil immigration detention.  *See, e.g.*,

*United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020); *Wali v. Raycraft*, No.

1:26-cv-145, 2026 WL 496707, at *2 (S.D. Ohio Feb. 23, 2026).  *Mathews* instructs the Court to

consider three factors: (1) the private interest that will be affected by the official action; (2) the

risk of erroneous deprivation of that interest; and (3) the government's interest, including the

fiscal and administrative burdens that the additional or substitute procedures entail.  424 U.S. at 335.  Two of the three factors favor Singh.

The first *Mathews* factor, the private interest that will be affected by the official action, strongly favors Singh.  As noted above, at the heart of the Fifth Amendment is the right to be free from deprivation of liberty, and his liberty is at stake.  Singh has a significant private interest in avoiding detention, and especially detention indistinguishable from criminal incarceration.  According to the Habeas Petition, Singh is married to an American citizen, and he has no criminal history.  He is employed and has a job to which to return.  He has a pending request for asylum.  Singh's detention without a bond hearing impinges on his liberty.

The second factor also favors Singh.  An individualized bond redetermination hearing provides a mechanism for the Immigration Judge to determine whether Singh poses a flight risk or danger to the community, thereby reducing the risk of erroneous deprivation of his right not to be deprived of liberty without due process.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 785.  Finally, the last factor is neutral.  The Government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and prevent harm to the community, but nothing in the record before this Court suggests that detention of Singh is necessary to further the Government's interest.  Singh was detained because he was complying with his obligation to check in with ICE.  Nor has the Government showed that a due process-compliant individualized bond hearing would impose undue administrative or financial costs.  In fact, the Government provided bond hearings to detained noncitizens like Singh for almost thirty years before DHS issued an Interim Guidance Regarding Detention Authority for Applicants for Admission on July 8, 2025 changing its detention policy.  *See* https://perma.cc/5GKM-JYGX.

In sum, two of the three *Mathews* factors favor Singh and compel this Court to hold that

his continued detention under § 1225(b)(2)(A) violates his Fifth Amendment right to due process. *See Urrutia-Diaz*, 2025 WL 3689158, at \*7–8 (all three *Mathews* factors weigh in petitioner's favor); *Del Villar v. Noem*, No. 4:25-cv-00137-GNS, 2025 WL 3231630, at \*6–7 (W.D. Ky. Nov. 19, 2025) (all three factors favor the petitioner); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 503–506 (S.D.N.Y. 2025) (addressing due process claim); *see also Lopez Benitez*, 795 F.Supp.3d at 491–496 (discussing due process and *Mathews*); *Lopez-Campos*, 797 F.Supp.3d at 784–85 (applying *Mathews*); *Chavez v. Dir. of Detroit Field Office*, No. 4:25-cv-2061, 2025 WL 3187080, at \*8 (N.D. Ohio Nov. 14, 2025) (summary conclusion of due process violation and collecting cases).

The Court holds that imposing mandatory detention upon Singh under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing violates Singh's due process rights.

**D.    Attorney Fees and Costs**

Singh seeks attorney fees and costs. (Doc. 1 at PageID 25.)   The Equal Access to Justice Act permits a court to award "reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b).  The Court will consider a motion for any attorneys' fees and costs filed in conformity with the procedures set forth in the statute and the local rules.

**III.    CONCLUSION**

For the reasons stated above, the Court **FINDS** that Singh is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but instead is detained under 8 U.S.C. § 1226(a). Therefore, detaining him without a bond hearing violates his statutory rights and due process rights under the Fifth Amendment.  The Court **ORDERS that within seven days of entry of**

17

**this Order,** Respondents shall either (1) provide Singh with a due process compliant, individualized bond redetermination hearing before an Immigration Judge, at which the Government shall bear the burden of persuasion justifying his continued detention; or (2) release Singh from custody.  If Respondents choose to provide a bond hearing in lieu of releasing Singh from custody, then:

(1) Respondents shall provide a copy of this order to the Immigration Judge before any hearing;

(2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;

(3) Respondents shall bear the burden of persuasion of justifying Petitioner's continued detention and adduce clear and convincing evidence that Petitioner is a danger to the community.  *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024), *reh'g en banc denied* (Oct. 24, 2025); *Soto-Medina v. Lynch*, No. 1:25-CV-1704, — F. Supp. 3d —, 2026 WL 161002, at *9–11 (W.D. Mich. Jan. 21, 2026); *Azalyar v. Raycraft*, No. 1:25-cv-916, — F.Supp.3d —, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026); and

(4) the Immigration Judge shall consider whether less restrictive alternatives to detention can reasonably address the Government's interest, as well as Petitioner's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *1 (S.D.N.Y. Oct. 16, 2025).

The Court further **ORDERS that within ten days of entry of this Order**, Respondents shall file a report informing the Court whether and when a due process compliant, bond redetermination hearing was held or whether and when Singh was released from custody.

18

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge